Larry D. WALTON and Pamela L. Walton, Plaintiffs–Appellants,

v.

Ray GILTON and Barbara Gilton, Defendants–Respondents.

No. 26837.

Missouri Court of Appeals, Southern District, Division One.

Oct. 21, 2005.

Ralph L. Innes, Edmundson, Edmundson & Innes, Poplar Bluff, MO, for Appellants.

John F. Scott, Scott, Kidwell & Scott, Poplar Bluff, MO, for Respondents.

JAMES K. PREWITT, Presiding Judge.

Larry D. Walton and Pamela L. Walton ("Appellants"), husband and wife, appeal from a judgment entered by the trial court on January 13, 2005, in favor of Ray Gilton and Barbara Gilton ("Respondents"), husband and wife. Appellants sought title to real property by adverse possession.

Appellate review in this non-jury case requires that the judgment be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Schaefer v. Rivers,* 965 S.W.2d 954, 956 (Mo.App.1998). The trial court's judgment is presumed valid, the burden is on the appellant to demonstrate its incorrectness, and due regard is given to the trial court to judge the credibility of witnesses. *Id.*

Appellants and Respondents own adjacent real property. Respondents have lived at the property known as 2147 County Road 425 since 1975. Appellants have lived at 2001 County Road 425 since acquiring the property from John and Pat Morgan in 1985. The Morgans purchased this property from Norma and Oscar Morgan in 1978.

In 1975, Respondent Ray Gilton and Oscar Morgan built a fence along what they considered the property line. No survey was done at the time. In 1992, Respondents had a survey conducted which determined that the record property line was south of that fence.

When Respondents built a new fence in April of 2003, it followed the surveyed line

with the exception of an area reserved for Appellants' driveway. Appellants filed their petition on October 15, 2003. Trial was held on August 27, 2004, and Findings of Fact, Conclusions of Law, and Judgment were entered on January 13, 2005. The trial court found Appellants were aware of the 1992 survey and "that the actual property line was not the old fence, but rather where the new fence is located." The trial court also found Appellants used the portion of the disputed area with "the knowledge and acquiescence of [Respondents]." The court ordered that title of the disputed property be vested in Respondents. Appellants filed their notice of appeal on February 14, 2005.

 "To prevail on a claim of adverse possession, Respondent must prove by a preponderance of the evidence . . . that the possession was (1) hostile and under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years." *Luttrell v. Stokes,* 77 S.W.3d 745, 750 (Mo.App.2002). "[L]ong and continued use creates a presumption that it was adverse and casts on the landowner the burden of showing that it was permissive." *Harmon v. Hamilton,* 903 S.W.2d 610, 613 (Mo.App.1995).

 "[L]ong acquiescence in a fence as a boundary line will warrant a presumption that it is the true line." *Kelley v. Prock,* 825 S.W.2d 896, 900 (Mo.App.1992).

'Acquiescence for a length of time is evidence of a parol agreement that the line so delineated is to be considered the boundary line[,][a]nd, where the line has been acquiesced in for a great number of years by all the parties interested, it is conclusive evidence of an agreement to that line.'

*Id.* (quoting *Mothershead v. Milfeld,* 361 Mo. 704, 236 S.W.2d 343, 347 (1951)).

[A]lthough a fence built by one with record title to the property where the fence is located does not necessarily establish a belief that the fence is the property line, as there are many reasons for not placing a fence on the property line, ... fencing property to which one does not have record title is a strong indication of a claim to the land.

*Crowley v. Whitesell,* 702 S.W.2d 127, 128 (Mo.App.1985).

From 1975 to 1992, the initial fence appeared to have been treated as the property line. Even if we assume that Appellants acquired title to the disputed property, under the evidence they could have lost that title after the survey in 1992. There was sufficient evidence for the trial court to find that since the survey Respondents re-acquired title through adverse possession. The trial court found that Appellants were aware of the 1992 survey, **(LF, 17)** and "their actions and/or failure to act for a period of more than ten years bars them from making a claim to said property."[1]

Appellant was building a shed on the post–1992 property line. Respondent Ray Gilton testified Appellants stopped construction and relocated the shed based on the survey; Appellant Larry Walton testified he stopped because he could not afford to finish the shed and later chose to build the structure closer to his house.

Respondent Ray Gilton testified he placed five steel posts "on every one of the survey markers." He described these posts as "six-foot metal fence [posts]." Gilton testified that the posts remained until the new fence was built in April of 2003. He confirmed spraying purple spray paint on the trees along the property line in 1996 or 1997. Gilton also testified that Appellant Larry Walton approached him about buying this particular tract because the survey line came so close to his driveway. Gilton said he would not sell the property, but he agreed to let Appellants use the driveway.

Ray Gilton testified that between 1992 and 2003, he and his wife, Barbara, believed the property to the survey line belonged to them. He testified to cutting wood, hunting, and riding a four-wheel vehicle on the area. Appellant Larry Walton testified that during this time period, he maintained the area, and his daughter used this area as a basketball court.

Appellant Larry Walton testified he didn't see the five steel posts that Respondent said he placed on the survey line, but stated that he saw the surveyor as well as the survey stakes. Walton also admitted that he walked the survey line in 1992, following the "narrow furring strips" which were tied with orange flags by the surveyor. Walton stated he still considered the old fence as the proper property line. Walton denied offering to purchase the piece of property from Respondents.

Appellant Pamela Walton testified to seeing the surveyor and walking the survey line. She did not recall seeing any steel posts marking the property line. Respondents' witness, Chris Halcumb, testified that he and Appellant Larry Walton worked on the shed which Appellants began building in 1992. Halcumb testified that Larry Walton told him to move their building equipment to the site of the com-

---

1. Section 516.010, RSMo 2000, states:

 No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person, whether citizen, denizen, alien, resident or nonresident of this state, unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

pleted shed "because the property lines had changed and that wasn't Larry's property now and he had to move it down to where it was on his property for sure." Halcumb admitted he could not remember the exact year this occurred; he only knew it was in the early 1990's.

Respondent Barbara Gilton testified that Appellant Larry Walton offered to buy the disputed area shortly after the 1992 survey. Neighbor Mike Weatherford testified that he recalled a survey being completed and the results also affecting the line between his property and Appellants property, as the newly-determined property line crossed his driveway as well. Weatherford approached Appellant, discussed the property line shift, and asked if he could continue to use the property covering his driveway. Appellant agreed but later refused to sell the property.

The findings and conclusions entered by the trial court are supported by evidence. " 'The trial judge is in a better position than this court to determine credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record.' " *Crowe v. Clairday*, 935 S.W.2d 343, 346 (Mo.App.1996) (quoting *In re the Marriage of Gardner*, 890 S.W.2d 303, 304–05 (Mo.App.1994)). The trial court properly applied the ten-year limitations of 516.010, RSMo 2000. The petition was filed outside the time period afforded.

As Appellants were time-barred from bringing this claim, we need not consider their remaining points.

The judgment is affirmed.

PARRISH, J., and RAHMEYER, J., concur.